IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------

ETTA K. EARLS,

                    Plaintiff,

-vs-

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

------------------------------------------------

: CASE NO. 1:09 CV 01465
:
:
: <u>MEMORANDUM OF OPINION AND</u>
: <u>ORDER REJECTING THE</u>
: <u>MAGISTRATE JUDGE'S REPORT AND</u>
: <u>RECOMMENDATION AND AFFIRMING</u>
: <u>THE DECISION OF THE ALJ</u>
:
:
:
:

UNITED STATES DISTRICT JUDGE LESLEY WELLS

    Plaintiff Etta K. Earls challenges the Commissioner of Social Security's ("Commissioner") denial of her application for Supplemental Security Income and Disability Insurance Benefits. (Docket No. 1). This matter was automatically referred to United States Magistrate Judge David Perelman for a Report and Recommendation ("R&R"), pursuant to Local Civil Rule 72.2(b).

    In his R&R, Magistrate Judge Perelman recommended this Court remand the case, because the Administrative Law Judge's ("ALJ") determination that Ms. Earls has the residual functional capacity ("RFC") to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently was not supported by substantial evidence. The Magistrate Judge came to this conclusion on the grounds that the ALJ impermissibly

substituted his own judgment for that of the medical doctor in assessing the RFC. The Commissioner filed timely objections, to which Ms. Earls has responded. For the reasons that follow, the Court will find that the Commissioner's objections are well taken. The Court, accordingly, will reject the recommendations of the Magistrate Judge and uphold the decision of the ALJ.

**I. Background**

The plaintiff Etta K. Earls applied for Supplemental Security Benefits ("SSI") and Disability Insurance Benefits ("SSD") on 24 November 2003. (Tr. 22-23, 44-46, 252-54). Her applications were denied both initially and upon reconsideration. She requested a hearing, and her case was heard before an administrative law judge ("ALJ") on 8 January 2008. She testified while represented by counsel. A vocational expert Mr. Bruce Holderead and medical expert Dr. Robert Newman were also called as witnesses.

*A. The ALJ's Decision*

In a decision dated 24 January 2008, the ALJ denied Ms. Earls' claims. The ALJ made the following pertinent findings of fact and conclusions of law:

> 5. After careful consideration of the entire record, I find the claimant has the residual functional capacity to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk for six hours in an eight-hour workday. She can perform simple, routine work with superficial interaction with coworkers and the public. She can not perform work activity that involves negotiation or confrontation. She can not perform work activity with high production quotas or piece work.

2

(Tr. 271). The ALJ further concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible." (Tr. 273). The ALJ reasoned that Ms. Earls' subjective complaints of debilitating pain were not consistent with the record as a whole.

First, the ALJ noted inconsistencies in Ms. Earls' own statements and evidence of symptom magnification. (Tr. 273). At one point the claimant reported that she is in constant pain and cannot function with or without medication. (Tr. 112). However, at her most recent consultative psychological evaluation she indicated that she engaged in routine daily household activities. (Tr. 186). For instance, stated that she kept a garden and planted flowers, spent time with her grandchildren, cooked, cleaned, did laundry, shopped, and had a valid driver's license. (Tr. 186, 273). Furthermore, Ms. Earls reported to her physician that her pain was only intermittent with variable intensity. (Tr. 177, 273). Other evidence indicated that Ms. Earls' conditions were all treatable and that her symptoms improved with medication. (Tr. 250, 274).

The ALJ also considered the objective medical evidence, which he considered to be inconsistent with the severity of the pain alleged. (Tr. 274). An MRI did show a bulging disc, but with no herniation, and an x-ray revealed a normal cervical spine. (Tr. 210, 222, 274). Physical examination revealed a near full range of motion and negative straight leg raising. (Tr. 177, 199). There was no objective evidence of significant muscle spasm, muscle atrophy, motor weakness, or sensory changes. (Tr. 274).

3

The ALJ went on to consider the opinion evidence. He looked to the psychological evaluation of Donald Degli, M.A. (Tr. 274). According to the April 2004 evaluation, Ms. Earls "was mildly limited in her abilities to interact with peers, supervisors, [and] the general public . . . " (Tr. 146, 274). Also noted is a mild impairment in the "ability to maintain attention, concentration, persistence and pace in a competitive work setting." (Tr. 146). The ALJ gave no weight to Mr. Degli's opinion, but concluded that "updated mental health evidence and testimony [demonstrate] that the claimant has some vocational limitations because of a mental impairment." (Tr. 274).

The ALJ considered the evaluations of two State Agency psychologists, conducted 2 May 2004 and 1 August 2005. (Tr. 159-62, 188-196, 275). The ALJ gave substantial weight to the later evaluation, which noted that the claimant was mildly limited in maintaining social functioning and moderately limited in maintaining concentration, and persistence or pace. (Tr. 192, 275). He gave no weight to the other, because later obtained evidence reflected greater limitations. (Tr. 275).

The ALJ considered the medical opinion of A.K. Bhaiji, M.D. (Tr. 275). The doctor's 20 August 2004 diagnosis included "bursitis, arthritis, liver mass, lumbar sprain/strain, hypothyroidism, and depression." (Tr. 165, 275). Dr. Bhaiji noted that Ms. Earls "had no difficulty getting on and off the examining table," and that she could walk heel to toe with a normal gait. (Tr. 165). Dr. Bhaiji concluded that she would not have difficulty sitting, but might have difficulty standing, walking, lifting and carrying objects, and traveling. (Tr. 165). The ALJ gave Dr. Bhaiji's opinion no weight because it lacked specification and was based on a single examination. (Tr. 275).

4

The ALJ also considered the opinions of State Agency physicians, Dr. Holbrook and Dr. Hinzman, that the claimant was capable of medium work – lifting and carrying 50 pounds occasionally and 25 pounds frequently. (Tr. 171). The physicians further opined that "she could stand, walk, and sit for six hours in an eight-hour workday," but "was limited in the use of her upper extremities in reaching in all directions." (Tr. 171-72). The ALJ gave these conclusions no weight because more recently submitted evidence showed greater limitations. (Tr. 275).

The ALJ next considered the 13 July 2005 consultative psychological examination of David M. House, Ph.D. (Tr. 183-87; 275-76). Ms. Earls was diagnosed with "a mood disorder, secondary to thyroid issues with major depressive features, post traumatic stress disorder, alcohol abuse, and nicotine dependence." Dr. House concluded that Ms. Earls was mildly limited in concentration and attention, insight and judgment, and in relating to the general public. The ALJ gave this assessment considerable weight because he found it consistent with the evidence on the record.

Finally, the ALJ considered medical expert Dr. Newman's opinion that Ms. Earls could probably do sedentary work four to six hours a day, provided she could "get up and circulate, and move around for a few minutes when she needs to." (Tr. 381-82). He testified that she can perform simple, routine work with superficial interaction with coworkers and the public, but cannot perform work activity that involves negotiation or confrontation. (Tr. 382-83). The ALJ gave partial weight to the Dr. Newman's opinion, because he concluded that Ms. Earls' "medical treatment and activities of daily living are more consistent with the ability to perform light work activity." (Tr. 276).

5

*B. The Magistrate Judge's Report and Recommendation*

Magistrate Judge Perelman took issue with the ALJ's conclusion that the claimant has the residual functional capacity for light work, that is, the ability to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, and to sit, stand, and walk for six hours in an eight-hour workday. He found that the ALJ's RFC assessment was the result of his "exercis[e] [of] 'medical expertise' the law does not recognize he possesses." R&R, at 4. Specifically, the R&R notes that rather than accepting Dr. Newman's conclusion that the claimant is only capable of sedentary work, the ALJ determined that Ms. Earls could engage in light work. Because Dr. Newman was the only medical professional whose opinion the ALJ did not completely reject when considering the claimant's RFC, the magistrate judge reasoned that the ALJ should have given his opinion greater weight. The R&R also recommended the finding that the ALJ erred by discounting Dr. Newman's opinion without a reasoned explanation.

## II. Judicial Review

Under 28 U.S.C. § 636(b)(1)(C), this Court must make a de novo determination of those portions of the report and recommendation to which objection is made. "[T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). This task calls for a reexamination of all the relevant evidence, previously reviewed by the magistrate judge. Lashley v. Sec'y of Health and Human Srvcs., 708 F.2d 1048, 1053 (6th Cir.1983).

The Court must determine whether substantial evidence in the administrative record supports the ALJ's factual findings, and whether the ALJ "applied the correct legal criteria." Bowen v. Comm'r. of Soc. Sec., 478 F.3d 742, 745 46 (6th Cir.2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Id. at 746 (citing in part Richardson v. Perales, 402 U.S. 389, 401 (1971)). It consists of " 'more than a scintilla of evidence but less than a preponderance . . . '" Rogers v. Comm'r. of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not de novo. See Cutlip v. Secretary of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.1994). Whether the Court agrees or disagrees with an ALJ's factual findings or whether the administrative record contains evidence contrary to those findings is irrelevant to this inquiry. Rogers, 486 F.3d at 241. Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." Rogers, 486 F.3d at 241 (citing Her v. Comm'r. of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir.1999)).

The second line of judicial inquiry reviewing the ALJ's legal criteria may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. See Bowen, 478 F.3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." Id. (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 546 47 (6th Cir.2004)).

7

**III. Law and Argument**

The Commissioner objects to the R&R's conclusions on the grounds that "the ALJ is not required . . . to adopt one particular medical source's opinion to the exclusion of all others; the ALJ's role is to consider and weigh the conflicting medical evidence and determine the extent of a claimant's physical restrictions." (Objections at 2). The Commissioner argues that the ALJ did not "play doctor" by assigning the RFC he did, because, under the regulations, "[t]he ALJ, not a physician, is responsible for determining a claimant's RFC based on the evidence as a whole." (Objections at 2). In the Sixth Circuit, an ALJ's RFC assessment may be based on a variety of factors, including medical evidence, non-medical evidence, and claimant testimony. The Commissioner argues that the record, considered in its entirety, provides substantial evidence supporting his decision.

In this instance, the Court agrees with the Commissioner. Although Dr. Newman was the only medical professional whose opinion the ALJ did not completely reject, this does not mean that the ALJ was bound to fully accept his conclusions, as the magistrate judge recommends he was. First of all, the ALJ provided a reasoned basis for discounting Dr. Newman's medical opinion. The ALJ reasoned that Ms. Earls' "medical treatment and activities of daily living are more consistent with the ability to perform light work activity." This explanation is adequate, as there is substantial evidence on the record, including Ms. Earls' own statements, that would contradict Dr. Newman's contention that Ms. Earls' was only capable of sedentary work. For instance, during a consultative examination with Dr. House, Ms. Earls reported that she

8

works in the garden, cleans around the house, does laundry, shops for groceries, and has a valid driver's license. (Tr. 186). She reported only intermittent lower back pain to her physician Dr. Lacey, and there is evidence of that all of Ms. Earls' conditions were treatable and that her symptoms improved with medication. (Tr. 177, 250). In addition, objective diagnostic testing did not support Ms. Earls' claims of debilitating pain. (Tr. 177, 199, 210, 222, 274).

Second, the Commissioner is correct that "[t]he responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." See 20 C.F.R. §§ 404.1546(c), 416.946(c). An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding. See Ford v. Comm'r of Soc. Sec., 114 Fed.Appx. 194, 197 (6th Cir. 2004). Moreover, Social Security Policy Interpretation is quite specific about the independent and specialized judgment of the ALJ in this capacity:

> From time-to-time, medical sources may provide opinions that an individual is limited to "sedentary work," "sedentary activity," "light work," or similar statements that appear to use the terms set out in our regulations and Rulings to describe exertional levels of maximum sustained work capability. Adjudicators must not assume that a medical source using terms such as "sedentary" and "light" is aware of our definitions of these terms. *The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability.*

SSR 96-5p(emphasis supplied). Therefore, in this instance, the ALJ was not obligated to accept Dr. Newman's assessment of Ms. Earls' residual functional capacity.

Of course, while this judgment is reserved to the Commissioner, it must nonetheless be supported by substantial evidence. And, in this instance, the Court finds that it is. The Commissioner properly considered a range of factors, including the

9

claimant's own statements, objective medical evidence, and the opinion evidence of medical and non-medical professionals. Noting in particular Ms. Earls' statements regarding her daily activities, her unremarkable diagnostic test results, and the efficacy of treatment, the ALJ reasonably concluded that Ms. Earls is capable of light work. It is notable that in coming to this conclusion he did not adopt the opinions of Drs. Holbrook and Hinzman, both of whom concluded that Ms. Earls has fewer limitations, that is, she is capable of more strenuous work. It is apparent that the ALJ weighed these opinions with all the evidence on the record, including the opinion of Dr. Newman. In this Court's judgment, the record as a whole provides substantial evidence supporting the ALJ's final decision.

## IV. Conclusion

For the reasons stated above, the Commissioner's objections are well taken. The Court accordingly rejects Magistrate Judge Perelman's recommendations and affirms the decision of the ALJ.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE

Date: 1/3/2011