IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------
ETTA K. EARLS,

                            Plaintiff,

               -vs-

COMMISSIONER OF SOCIAL
SECURITY,

                         Defendant.
------------------------------------------------------

CASE NO. 1:09 CV 01465

<u>MEMORANDUM OF OPINION AND ORDER</u>

UNITED STATES DISTRICT JUDGE LESLEY WELLS

      Before the Court is plaintiff Etta K. Earls motion to alter or amend this Court's judgment dated 3 January 2011. (Doc. 30). The defendant Commissioner of Social of Security has filed an opposition brief. (Doc. 31). Ms. Earls maintains that the Court clearly erred in its disposition of this matter, and she raises two arguments that appeared in her brief on the merits, but were addressed neither by this Court nor the magistrate judge to whom this matter was referred for report and recommendation. The Court discusses her arguments below and concludes that they are without merit. Ms. Earls' motion will accordingly be denied.

**I. Background**

The plaintiff Etta K. Earls applied for Supplemental Security Benefits ("SSI") and Disability Insurance Benefits ("SSD") on 24 November 2003. (Tr. 22-23, 44-46, 252-54). Her applications were denied both initially and upon reconsideration. She requested a hearing, and her case was heard before an administrative law judge ("ALJ") on 8 January 2008. She testified while represented by counsel. A vocational expert Mr. Bruce Holderead and medical expert Dr. Robert Newman were also called as witnesses.

In a decision dated 24 January 2008, the ALJ determined that Ms. Earls retained the residual functional capacity to

> . . . lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk for six hours in an eight-hour workday. She can perform simple, routine work with superficial interaction with coworkers and the public. She can not perform work activity that involves negotiation or confrontation. She can not perform work activity with high production quotas or piece work.

(Tr. 271). The ALJ further concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible." (Tr. 273). The ALJ reasoned that Ms. Earls' subjective complaints of debilitating pain were not consistent with the record as a whole.

In reaching these conclusions, the ALJ considered the record evidence. First, he noted inconsistencies in Ms. Earls' own statements and evidence of symptom magnification. (Tr. 273). At one point the claimant reported that she is in constant pain and cannot function with or without medication. (Tr. 112). However, at her most recent

2

consultative psychological evaluation she indicated that she engaged in routine daily household activities. (Tr. 186). For instance, stated that she kept a garden and planted flowers, spent time with her grandchildren, cooked, cleaned, did laundry, shopped, and had a valid driver's license. (Tr. 186, 273). Furthermore, Ms. Earls reported to her physician that her pain was only intermittent with variable intensity. (Tr. 177, 273). Other evidence indicated that Ms. Earls' conditions were all treatable and that her symptoms improved with medication. (Tr. 250, 274).

The ALJ also considered the objective medical evidence, which he considered to be inconsistent with the severity of the pain alleged. (Tr. 274). An MRI did show a bulging disc, but with no herniation, and an x-ray revealed a normal cervical spine. (Tr. 210, 222, 274). Physical examination revealed a near full range of motion and negative straight leg raising. (Tr. 177, 199). There was no objective evidence of significant muscle spasm, muscle atrophy, motor weakness, or sensory changes. (Tr. 274). The ALJ went on to consider the opinion evidence. He looked to the psychological evaluation of Donald Degli, M.A. (Tr. 274). According to the April 2004 evaluation, Ms. Earls "was mildly limited in her abilities to interact with peers, supervisors, [and] the general public . . . " (Tr. 146, 274). Also noted is a mild impairment in the "ability to maintain attention, concentration, persistence and pace in a competitive work setting." (Tr. 146). The ALJ gave no weight to Mr. Degli's opinion, but concluded that "updated mental health evidence and testimony [demonstrate] that the claimant has some vocational limitations because of a mental impairment." (Tr. 274).

The ALJ considered the evaluations of two State Agency psychologists, one conducted on 2 May 2004 by Stephen J. Meyer, Ph.D, and the other on 1 August 2005

3

by Leslie Rudy, Ph.D. (Tr. 159-62, 188-196, 275). The ALJ gave substantial weight to Dr. Rudy's evaluation, which noted that the claimant was mildly limited in maintaining social functioning and moderately limited in maintaining concentration, and persistence or pace. (Tr. 192, 275). He gave no weight to the other evaluation because later obtained evidence reflected greater limitations. (Tr. 275).

The ALJ considered the medical opinion of A.K. Bhaiji, M.D. (Tr. 275). The doctor's 20 August 2004 diagnosis included "bursitis, arthritis, liver mass, lumbar sprain/strain, hypothyroidism, and depression." (Tr. 165, 275). Dr. Bhaiji noted that Ms. Earls "had no difficulty getting on and off the examining table," and that she could walk heel to toe with a normal gait. (Tr. 165). Dr. Bhaiji concluded that she would not have difficulty sitting, but might have difficulty standing, walking, lifting and carrying objects, and traveling. (Tr. 165). The ALJ gave Dr. Bhaiji's opinion no weight because it lacked specification and was based on a single examination. (Tr. 275).

The ALJ also considered the opinions of State Agency physicians, Dr. Holbrook and Dr. Hinzman, that the claimant was capable of medium work -- lifting and carrying 50 pounds occasionally and 25 pounds frequently. (Tr. 171). The physicians further opined that "she could stand, walk, and sit for six hours in an eight-hour workday," but "was limited in the use of her upper extremities in reaching in all directions." (Tr. 171-72). The ALJ gave these conclusions no weight because more recently submitted evidence showed greater limitations. (Tr. 275).

The ALJ next considered the 13 July 2005 consultative psychological examination of David M. House, Ph.D. (Tr. 183-87; 275-76). Ms. Earls was diagnosed with "a mood disorder, secondary to thyroid issues with major depressive features, post traumatic

4

stress disorder, alcohol abuse, and nicotine dependence."  Dr. House concluded that Ms. Earls was mildly limited in concentration and attention, insight and judgment, and in relating to the general public.  The ALJ gave this assessment considerable weight because he found it consistent with the evidence on the record.

The ALJ considered medical expert Dr. Newman's opinion that Ms. Earls could probably do sedentary work four to six hours a day, provided she could "get up and circulate, and move around for a few minutes when she needs to."  (Tr. 381-82).  He testified that she can perform simple, routine work with superficial interaction with coworkers and the public, but cannot perform work activity that involves negotiation or confrontation.  (Tr. 382-83).  The ALJ gave partial weight to the Dr. Newman's opinion, because he concluded that Ms. Earls' "medical treatment and activities of daily living are more consistent with the ability to perform light work activity."  (Tr. 276).

The ALJ then concluded that based on Ms. Earls' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 277). He accordingly made a finding that Ms. Earls is not disabled. (Tr. 277). In making this assessment, he relied on the testimony of a vocational expert who stated that given her particular characteristics, Ms. Earls was capable of performing the job requirements for housekeeper, mail room clerk, or router. (Tr. 277). The vocational expert testified to the prevalence of these jobs in the regional, statewide, and national economies, and the ALJ concluded that the numbers were significant.

Following denial of benefits, Ms. Earls filed the present suit, and her case was automatically referred to Magistrate Judge David Perelman for report and

5

recommendation. The magistrate judge recommended that the case be remanded on the ground that the ALJ erred by substituting his own judgment for that of the medical doctor in assessing Ms. Earls' residual functional capacity. (Doc. 23). This Court disagreed with the magistrate judge's recommendation and dismissed Ms. Earls' complaint. (Doc. 28). Ms. Earls has since filed a motion to alter or amend the Court's judgment pursuant to Federal Rule 59(e).

**II. Standards of Review**

A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir.1999).

Review of the Commissioner's decision is limited to determining whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Colvin v. Barnhart, 475 F.3d 727, 729-30 (6th Cir.2007). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y Health & Human Servs., 25 F.3d 284, 286 (6th Cir.1994) (per curiam) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, [the court] must defer to that decision even if there is substantial evidence in the record that would have supported an opposite conclusion," Colvin, 475 F.3d at 730 (quotation marks and citation omitted), and "even if the reviewing court would decide the matter differently." Cutlip, 25 F.3d at 286. "This court

6

does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Id. at 286 (citations omitted).

To make a determination as to disability, an ALJ undertakes a five-step sequential evaluation. 20 C.F.R. § 404.1520(a)(4)(i)-(v). First, the ALJ determines whether the claimant is engaged in substantial gainful activity; if she is, she is not disabled. Id. § 404.1520(a)(4)(i). Second, the ALJ determines whether the claimant suffers a severe medically determinable physical or mental impairment; if she does not, she is not disabled. Id. § 404.1520(a)(4)(ii). Third, if the claimant shows that her impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P.App. 1, she is deemed disabled. Id. § 404.1520(a)(4)(iii). Fourth, the ALJ considers the claimant's residual functional capacity to determine if she can still perform the work she has performed in the past; if she can, she is not disabled. Id. § 404.1520(a)(4)(iv). Finally, the ALJ determines whether, based on the claimant's RFC and her age, education, and work experience, the claimant can make an adjustment to other work; if she can, she is not disabled. Id. § 404.1520(a)(4)(v).

**III. Discussion**

    **A. Was the ALJ's RFC determination defective because he failed to consider the impact of all Ms. Earls' impairments?**

Ms. Earls maintains that the ALJ's RFC finding was defective because it did not include the impact of all the limitations noted by the physicians whose opinions the ALJ credited. She notes that the ALJ gave Dr. House's opinion "considerable weight," but the RFC did not reflect all the restrictions to which he opined. In particular, Dr. House stated

that Ms. Earls had moderate limitations in her ability to withstand stress and pressure; moderate limitations in her level of adaptability; and moderate limitations in her insight into her current situation and overall level of judgment. (Tr. 183-187).

Ms. Earls also points out that the ALJ accorded "substantial weight" to Dr. Rudy's opinion, but the RFC did not include some of the specific limitations that Dr. Rudy noted. In Section I of the Mental Residual Functional Capacity Assessment, Dr. Rudy made the following pertinent summary conclusions: that Ms. Earls is moderately limited in her ability to work in coordination with or in proximity to others without being distracted by them; that she is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and that she is moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 195).

Ms. Earls argues that the ALJ erred when he excluded these limitations from the RFC, on the ground that pursuant to SSR 96-8p "the adjudicator must explain why [an] opinion was not adopted," "[i]f the RFC assessment conflicts with an opinion from a medical source." The ALJ's RFC determination is as follows:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk for six hours in an eight-hour workday. She can perform simple, routine work with superficial interaction with coworkers and the public. She can not perform work activity that involves negotiation or confrontation. She can not perform work activity with high production quota or piece work.

(Tr. 271).

Ms. Earls is correct that the ALJ's RFC determination did not incorporate verbatim the specific limitations that Dr. House noted, but this is not to say that the RFC

8

conflicts with his opinion, such that the ALJ should have provided an explanation pursuant to SSR 96-8p.  The ALJ's conclusions that Ms. Earls can maintain only "superficial interaction with coworkers and the public" and that she cannot "perform work activity that involves negotiation or confrontation" are, if anything, consistent with the limitations noted by Dr. House. Dr. House noted a moderate limitation to withstand stress and pressure.  Certainly this limitation is a more general characterization of Ms. Earls' psychological impairments compared to the specific, work related limitation that she maintain only superficial interaction with coworkers and the public. But, these two limitations are in no way in conflict. On the contrary, it is consistent to say that a person with difficulty withstanding stress and pressure should avoid intense interactions involving confrontation or negotiation. Ms. Earls does not explain – and the Court does not discern – how this or any of the other opined restrictions conflict with Ms. Earls' RFC.

Further, the limitations described by Dr. Rudy were noted in Section I of the Mental Residual Functional Capacity Assessment. (Tr. 194). As a consequence, the ALJ was not required to include these specific limitations when calculating Ms. Earls' RFC. Other courts have concluded, as does this one, that "Section I of the mental assessment is merely a worksheet and does not constitute the RFC assessment." Coleman v. Astrue, 2010 WL 4955718, at *7 (N.D.Ohio 2010) (citing Velez v. Comm'r of Soc. Sec., 2010 WL 1487599, at *6 (N.D.Ohio Mar. 26, 2010) ("In general, ... the ALJ is not required to include the findings in Section I in formulating residual functional capacity.")). "It is in [Section III] that the actual mental RFC assessment is recorded." See POMS DI 24510.060(B)(2)(available at http://policy.ssa.gov/poms.nsf/lnx/0424510060). Section III

9

"explain[s] the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." Id. Ms. Earls does not argue and the Court does not perceive that Section III conflicts with the ALJ's ultimate RFC determination.

As the Court discussed in its earlier order, the RFC ultimately assigned to Ms. Earls was a decision reserved to the ALJ. See 20 C.F.R. 404.1546(c), 416.946(c) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician"). Ms. Earls cites no rule that required the ALJ to incorporate verbatim into the RFC each and every finding contained in the opinions of Drs. House and Rudy, as a consequence of having accorded their opinions considerable and substantial weight, respectively. Policy interpretation of the Social Security Administration warns against equating opinions contained in a medical source statement, such as those provided by Dr. House or Dr. Rudy, with the adjudicator's RFC assessment. See SSR 96-5p, 1996 WL 374183, at *4. As that publication explains, "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Id.

Ms. Earls also points out that the ALJ posed the following question to the vocational expert:

> Now I'd like you to consider a second hypothetical worker. This person would have the same characteristics I have described but because of pain and the inability to concentrate, this person would be off task 20 percent of the time. Now

10

> that could mean that 20 percent of a given day they were unable to perform assigned duties or it could mean that one day a week they wouldn't be able to perform their duties. Would there be any work in the national, local or regional economy for such a worker?

(Tr. 389). The vocational expert answered the question in the negative. Ms. Earls contends that this hypothetical worker's impairments mirror her own, if one takes into account Dr. Rudy's opinion that she is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. She maintains, therefore, that if Dr. Rudy's opinion is credited, one must conclude that she is unable to perform a significant number of jobs in the national economy, based on the testimony of the vocational expert. This argument is unpersuasive. The question posed by the ALJ was a hypothetical, and it is "well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." Casey v. Sec'y of HHS, 987 F.2d 1230, 1235 (6th Cir.1993). And, importantly, the ALJ did not include Dr. Rudy's opined limitations in the RFC, nor was he required to do so, as discussed above.

>    **B. Did the ALJ err in relying on the vocational expert's testimony which was based job descriptions and titles contained in the Dictionary of Occupational Titles?**

The ALJ concluded that work existed in significant numbers in the national economy, which Ms. Earls would be capable of performing, based on her RFC, age, education, and work experience. In reaching this conclusion, the ALJ relied on the

11

testimony of a vocational expert who stated that Ms. Earls would be able to perform the work requirements of housekeeper, mail clerk, and router.

Ms. Earls contends that substantial evidence does not support the ALJ's conclusion, because the vocational expert's testimony was based on obsolete job descriptions contained in the Dictionary of Occupational Titles ("DOT"). Ms Earls maintains that the vocational expert should have relied on the more current job descriptions contained in the Occupational Information Network ("O*NET").  She states that the O*NET contains far more detailed and up to date job descriptions than those in the DOT.[1]   She argues that based on the updated O*NET descriptions, there are significant doubts whether she could perform the work requirements of housekeeper, mail clerk, or router, and she argues that remand is therefore necessary so that the ALJ can consider whether this is the case.

Ms. Earls contends that an unpublished Sixth Circuit case, Cunningham v. Astrue, 360 Fed.Appx. 606, 2010 WL 22286 (6th Cir. Jan.5, 2010), supports her position. In that case, the vocational expert relied on job descriptions contained in the

---

[1]    The O*NET descriptions are based on a number of categories, which include tasks, tools, knowledge, skills, abilities, activities, and context.  Within each category, the O*NET ranks a wide range of particular attributes associated with the position on scale of 1 to 100.  For example and rather unsurprisingly, under the housekeeping job description and within the "tasks" category, O*NET ranks first "carry linens, towels, toilet items, and cleaning supplies, using wheeled carts," with a score of 83 out of 100.  This  particular "task" is designated as a "core" activity.  While the O*NET ranks attributes such as this, which one would typically associate with a housekeeping position, it also lists attributes that appear completely unrelated.  For instance, under the "knowledge" category for housekeeper it lists "Medicine and Dentistry – Knowledge of the information and techniques needed to diagnose and treat human injuries, diseases, and deformities" and gives it a score of 24 out of 100.

DOT. He identified two jobs, which a person with the claimant's RFC and qualifications would be capable of performing, and concluded that a significant number of these jobs existed in the economy. On review, the Sixth Circuit concluded that "in light of the fact that more current job descriptions were available at the time of the hearing before the ALJ – the Department of Labor replaced the DOT with the [O*NET], a database that is continually updated based on data collections efforts that began in 2001 – and that the two descriptions relied on the VE are not found in O*NET, . . . the VE's dependence on the DOT listings alone does not warrant a presumption of reliability." Cunningham, 360 Fed.Appx. at 616.

Whether remand is appropriate in this instance boils down to whether substantial evidence supports the ALJ's conclusion that given Ms. Earls' age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that she can perform. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip, 25 F.3d at 286. This Court concludes that the ALJ's decision is adequately supported by the record and that the vocational expert's testimony is not undermined by the job descriptions contained in the O*NET.

In reaching his conclusion, the ALJ relied on the testimony of the vocational expert, which he was allowed to do. Title 20 CFR § 404.1566(e) contemplates the use of a vocational expert to determine whether a claimant is capable of performing work in the national economy, given her particular characteristics. When the vocational expert was presented with a hypothetical worker whose characteristics matched Ms. Earls', he testified that the hypothetical worker would be capable of performing the duties of the

13

occupations of housekeeper, mail room clerk, and router. (Tr. 387-88). The vocational expert testified to the prevalence of housekeeping, mail room clerk, and router jobs, and stated that such jobs exist in substantial numbers. Relying on this testimony, the ALJ concluded that Ms. Earls was not disabled and noted that, pursuant to SSR 00-4p, the vocational expert's testimony was consistent with the information contained in the DOT.

Ms. Earls has not raised doubts as to the vocational expert's reliability with respect to his reliance on the DOT, as was the case in Cunningham. In that case, the court was asked to determine whether substantial evidence supported the conclusion that the jobs at issue existed in significant numbers in the national economy, a question not at issue in the present case. That court was concerned that the jobs might not exist in significant numbers and ordered remand, because the relevant job descriptions were not included in the continually updated O*NET. Although Cunningham suggested that the particular DOT job descriptions at issue – document preparer and security camera monitor – may have been obsolete, it did not hold that the DOT is an unreliable or out-of-date source. Rather, the court acknowledged that pursuant to the regulations the DOT is a publication of which the ALJ may take notice. Cunningham, 360 Fed.Appx. at 615. Here, unlike Cunningham, the job descriptions applicable to Ms. Earls – housekeeper, mail clerk, and router – appear in both the DOT and the O*NET. Although the descriptions contained in the O*NET are more expansive than those in the DOT, they do not raise doubts as to the reliability of the DOT descriptions.

**IV. Conclusion**

For the reasons stated above, Ms. Earls' motion to alter or amend is denied.

IT IS SO ORDERED.

                                            /s/Lesley Wells
                                            UNITED STATES DISTRICT JUDGE

Date: 19 August 2011